# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

MARY R. NANCE,

                Plaintiff,

v.

NANCY BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

Case No. 2:17-cv-01004-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Mary R. Nance has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms the Commissioner's decision denying benefits.

## I. BACKGROUND

On November 25, 2013, Ms. Nance filed an application for a period of disability and disability insurance benefits and another application for supplemental security income benefits. Dkt. 8, Administrative Record (AR) 14. She alleged in her applications that she became disabled December 26, 2010.[1] *Id.* The claim was denied on initial administrative review and on

---

[1] SSDI benefits are based on earnings, and the benefits are limited to the period of insurance. 42 U.S.C. §§ 401(b), 423(c)(1), (d)(1)(A). The legal criteria for deciding whether a disability exists is the same under both SSDI and Supplemental Security Income (SSI). *Diedrich v. Berryhill*, 874 F.3d 634, 637 (9th Cir. 2017).

ORDER - 1

reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ) on March 8, 2016. AR 35-70. Ms. Nance and a vocational expert appeared and testified. *Id.*

The ALJ found that Ms. Nance could perform jobs that exist in significant numbers in the national economy, and therefore that she was not disabled. AR 14-28 (ALJ decision dated March 25, 2016). The Appeals Council denied Ms. Nance's request for review on April 28, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Ms. Nance appealed that decision in a complaint filed with this Court on September 13, 2017. Dkt. 1; 20 C.F.R. §§ 404.981, 416.1481.

The ALJ determined that Ms. Nance suffers from the following severe impairments: degenerative disc disease of the spine, right carpal tunnel syndrome, left knee degenerative joint disease, and obesity. AR 16. The ALJ reviewed the medical evidence and hearing testimony and decided that Ms. Nance was not disabled because even with those impairments she could still perform certain types of "sedentary work," including jobs as a final assembler, patcher, and document preparer. AR 20-27. The ALJ determined that those jobs exist in significant numbers in the national economy. *Id.*

In this appeal, the parties disagree about whether the ALJ erred in evaluating the medical opinion evidence to reach a residual functional capacity (RFC) for Ms. Nance, and about whether the ALJ erred in finding at step five that the number of jobs available to Ms. Nance is "significant."

Ms. Nance seeks reversal of the ALJ's decision and remand for an award of benefits or, alternatively, for further administrative proceedings, arguing that the ALJ misapplied the law and lacked substantial evidence for his decision. For the reasons set forth below, the undersigned concludes that the ALJ properly applied the law and substantial evidence supports his finding

ORDER - 2

that Ms. Nance can perform jobs existing in significant numbers in the national economy. The undersigned recommends that the ALJ's decision to deny benefits be affirmed.

## II. STANDARD OF REVIEW AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*.

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have RFC, and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can

ORDER - 3

be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

### III. THE ALJ'S CONSIDERATION OF THE MEDICAL EVIDENCE

Ms. Nance asserts that the ALJ erred in rejecting three medical opinions by treating physician Michelle Seelig, M.D.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Id.* at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant

ORDER - 4

probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

To reject the un-contradicted opinion of either a treating or examining physician, an ALJ must provide clear and convincing reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion. *Id.* "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Magallanes*, 881 F.2d at 751). In either case, the ALJ's reasons must be supported by substantial evidence in the record. *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995). In addition, a non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

A. <u>The ALJ's Consideration of Medical Evidence at Steps Four and Five</u>

Before evaluating steps four and five, the ALJ performed a more detailed assessment of the medical evidence to arrive at Ms. Nance's residual functional capacity (RFC). The Commissioner uses a claimant's RFC assessment at steps four and five to determine whether he or she can perform his or her past relevant work and whether he or she can do other work. SSR 96-8p, 1996 WL 374184, at *2. The RFC is what the claimant "can still do despite his or her limitations." *Id.* The ALJ based his assessment of Ms. Nance's RFC on an examination of the medical evidence as well as Ms. Nance's own testimony, and in part on his rejection of Dr.

ORDER - 5

Seelig's opinions that Ms. Nance's physical impairments would significantly limit her ability to perform functions necessary to hold a job. AR 20-26.

The ALJ found that Ms. Nance had the RFC

> **to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is capable of engaging in unskilled, repetitive, routine tasks in two hour increments; occasional stooping, squatting, crouching, crawling, kneeling, and climbing stairs and ramps; no climbing ropes, ladders, scaffolds; and limited to frequent handling and fingering with the right upper extremity.**

AR 20 (emphasis in original).

The ALJ determined at step four that Ms. Nance is unable to perform her "past relevant work." AR 26. Ms. Nance does not challenge that finding.

Finally, the vocational expert testified that a person with Ms. Nance's RFC could work as a final assembler, patcher, or document preparer. AR 66-67. Based on that testimony, the ALJ found Ms. Nance not disabled at step five. AR 26-27.

In this appeal, Ms. Nance challenges the ALJ's reasons for discounting all three of the opinions given by her treating physician, Dr. Seelig, and consequently the RFC the ALJ assessed.

B. <u>Dr. Seelig's 2014 Opinion</u>

Dr. Seelig completed a physical evaluation in February 2014, basing her opinion on Ms. Nance's reported symptoms, a physical examination, and a review of medical records including an x-ray report. AR 420-27. It was Ms. Nance's first visit to Dr. Seelig. AR 424. Dr. Seelig diagnosed her with chronic low back pain and remarked that this condition would make her completely unable to sit, stand, walk, lift, carry, push, pull, reach, stoop, and crouch. AR 421. She opined that Ms. Nance was limited to sedentary work and could frequently lift or carry only

ORDER - 6

items that weigh three pounds or less. AR 422. Dr. Seelig did not estimate how long these limitations would persist. *Id.*

The ALJ gave this opinion "little weight." AR 23. He noted that Dr. Seelig "is not an orthopedist or specialist;" that she gave no "medical explanation for the degree of limitation" she found; and that she was not a long-term provider when she gave the opinion. *Id.* He also noted that the objective evidence Dr. Seelig relied on was inconsistent with her opinion, as the lumbar-spine x-ray "showed no significant findings" and Dr. Seelig's own findings on examination "were inconsistent with the degree of limitation she reported." *Id.*

These were specific and legitimate reasons to discount Dr. Seelig's 2014 opinion. Although an ALJ should not discount a treating physician's opinion solely because he or she is not a specialist, a doctor's specialty is one of the factors an ALJ must consider in weighing the opinion. *See* 20 C.F.R. § 404.1527(c)(5). In addition, the ALJ gave other valid reasons for assigning little weight to Dr. Seelig's opinion.

The ALJ found that Dr. Seelig did not explain her opinion on the severity of Ms. Nance's limitations. AR 23. An ALJ "may 'permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). The record supports that finding here. Although Dr. Seelig opined that Ms. Nance would be severely affected (defined as an "[i]nability to perform one or more basic work-related activities") in almost every type of physical activity, she offered no explanation for those limitations, nor did she estimate how long they would last. AR 420-22. Instead, she referred to two attachments: notes from Ms. Nance's visit the same day and an x-ray result summary. *Id.*

ORDER - 7

Substantial evidence supports the ALJ's finding that those treatment notes and x-ray results were inconsistent with Dr. Seelig's opinion. *See* AR 23. The ALJ pointed to specific exam findings that he found inconsistent: Ms. Nance had a normal gait and was in no distress; the exam did not show that Ms. Nance was unable to bend or stoop; in a standing flexion test, Ms. Nance could repeatedly touch her fingertips almost to the floor without back pain; Ms. Nance had no pain with standing extension or lateral bending; and Ms. Nance "could easily perform a limited squat and return to standing." *Id.* (citing AR 416). The ALJ made a rational determination that these notes are inconsistent with Dr. Seelig's opinion that Ms. Nance is completely unable to sit, stand, walk, stoop, or crouch, among other functions. *See* AR 421; *Morgan*, 169 F.3d at 601 (Court defers to ALJ's resolution of conflicts and rational interpretation of evidence). Likewise, the ALJ reasonably determined the x-ray results that Dr. Seelig referenced, which contain no abnormal findings, are inconsistent with those extreme limitations. *See* AR 421, 423.

C. <u>Dr. Seelig's 2015 Opinion</u>

Dr. Seelig completed another evaluation in March 2015. She cited MRI results from May 2014 and several tests done on October 1, 2014. AR 671 (listing "SED rate, CRP, rheumatoid factor, cyclic citrullinated peptide AB 10/1/2014"); *see* AR 439. She listed diagnoses of chronic back pain, psoriatic arthropathy, cervicalgia, and degenerative joint disease in the knee. AR 671. She opined that because of these conditions Ms. Nance would be unable to perform basic work-related activities in sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching. *Id.* She opined that Ms. Nance is severely limited and thus unable to perform even sedentary work, and that these limitations would persist "indefinitely." AR 672.

ORDER - 8

The ALJ gave little weight to Dr. Seelig's 2015 assessment and opinion. AR 24. The ALJ found that Dr. Seelig again provided no medical explanation for her opinion and that the objective evidence did not support her opinion. *Id.* He noted that the 2014 MRI "showed only mild findings of [Ms. Nance's] spine;" the rheumatoid factor was negative; and Dr. Seelig's own examination on the day of the evaluation did not show "any significant objective findings." *Id.* The ALJ also noted that Ms. Nance had not followed up on recommended physical therapy for her knee. *Id.* He expressed skepticism as to how Dr. Seelig "would find the claimant indefinitely this limited when the claimant had not followed all recommended avenues of treatment" and reasoned that "[t]his suggests [Ms. Nance] is not that limited." *Id.*

The ALJ had specific and legitimate reasons to discount Dr. Seelig's 2015 opinion. The record supports the ALJ's finding that neither the test results Dr. Seelig cited nor her own examination support her opinion of extreme limitations: Assessing the MRI, Gregory Allen, M.D., wrote only, "Essentially normal. Slight degenerative disc change noted at the T11-12 level." AR 439. The rheumatoid factor was negative. AR 640. And Dr. Seelig's notes from Ms. Nance's visit on the same day showed no indication that Ms. Nance was severely limited. AR 630-32. Dr. Seelig did not make clinical findings at that visit. *Id.* Accordingly, the ALJ did not err in rejecting Dr. Seelig's March 2015 opinion.

D.  Dr. Seelig's 2016 Opinion

The ALJ gave some weight to Dr. Seelig's third opinion. In February 2016, Dr. Seelig conducted a physical evaluation and prepared an accompanying letter. AR 764-772. She opined that Ms. Nance could not lift ten pounds occasionally or stand or walk for two hours in a workday; that Ms. Nance would need to periodically alternate sitting and standing to relieve her pain and discomfort; that Ms. Nance would be limited in pushing and pulling; that she could

ORDER - 9

never climb, balance, stoop, crouch, kneel, or crawl; and that she would need to avoid heights, moving machinery, extreme temperatures, humidity, and vibrations. AR 764-66. Asked for "the medical conditions and findings that support this assessment," Dr. Seelig listed six conditions—psoriatic arthropathy, carpal tunnel syndrome, chronic low back pain, cervicalgia, myofascial pain, and anxiety—but no findings. AR 764-67. She also pointed to EMG testing in support of the pushing and pulling limitations. AR 765.

Dr. Seelig's letter described the limitations each condition would cause. Dr. Seelig opined that Ms. Nance's cervicalgia was "marked-severe" and would cause "some impairment in ability to persist and maintain pace," adding that Ms. Nance "may experience flare in pain leading to decompensation." AR 770. She noted that Ms. Nance had her first evaluation for this condition the same month. *Id.* Dr. Seelig opined that Ms. Nance's chronic low-back pain was also "marked-severe." AR 771. She referred to the 2014 MRI and noted its results: "Minimal degenerative changes at several disc levels and possible mild L5-S1 facet arthropathy. No significant abnormality identified in lumbar spine. No evidence of disc protrusion." *Id.* She opined that Ms. Nance's back pain would make her unable to persist and maintain pace and create a "possibility for decompensation and deterioration multiple times per year." *Id.* And Dr. Seelig opined that Ms. Nance's myofascial pain was also "[m]arked-severe," adding, "[h]er condition is complicated by morbid obesity" and "[s]he has limited activity and deconditioning." *Id.* She opined that this also would make Ms. Nance unable to persist and maintain pace and create a "possibility for decompensation and deterioration multiple times per year." AR 772.

The ALJ gave Dr. Seelig's 2016 opinion "some partial weight." AR 24. He found no objective support that could "reasonably explain an inability to lift up to ten pounds" or "why the claimant must alternate sitting and standing." *Id.* The ALJ credited Dr. Seelig's opinion that

ORDER - 10

carpal tunnel limits Ms. Nance's use of her arms and hands, but found that the EMG study, conservative treatment, and Ms. Nance's ability to play video games indicate that she can perform frequent handling and fingering. *Id.* The ALJ also credited some limitation on postural activities, but found that Dr. Seelig offered no explanation or support "as to why [Ms. Nance] could never do any of them." *Id.* He also found that Dr. Seelig did not explain the objective basis for the environmental limitations she found. *Id.*

The ALJ then addressed each condition that Dr. Seelig wrote about in her letter. AR 25. The ALJ credited some of the limitations reported by Dr. Seelig—that back pain, degenerative disc disease, and myofascial pain would affect Ms. Nance's ability to persist and maintain pace—and accordingly limited Ms. Nance "to unskilled, repetitive routine tasks of two hour increments." *Id.*

The ALJ also determined that the objective evidence was inconsistent with the severity of limitations reported by Dr. Seelig.

For example, the ALJ found that Dr. Seelig's opinion that Ms. Nance's cervicalgia was marked-severe was inconsistent with Ms. Nance's minimal complaints of symptoms, the lack of significant neurological exam findings, and conservative recommended treatment. *Id.* The ALJ also found an inconsistency between Dr. Seelig's opinion that Ms. Nance's chronic low-back pain was marked-severe with "mild objective findings on an MRI." *Id.* The ALJ determined that the objective evidence does not show Ms. Nance's back pain to be disabling, as that evidence showed she could "move about without guarding" and had negative straight leg raises, no atrophy, and good strength and was neurologically "intact except for decreased sensation of the left lateral thigh." *Id.* The ALJ further noted that Dr. Seelig's treatment recommendations—pain

ORDER - 11

medication, walking, and exercise—"seem[ ] inconsistent with her opinion of [Ms. Nance's] limitation to less than sedentary work." *Id.*

In challenging these findings, Ms. Nance relies primarily on treatment notes from two appointments with Randi Beck, M.D. Ms. Nance contends these notes show an objective basis for Dr. Seelig's opinion. Dkt. 12, p. 9. But Dr. Seelig gave no indication of any reliance on Dr. Beck's findings. AR 764-72. Although an ALJ must consider all of the evidence available in a claimant's case record, the ALJ is not required to discuss every piece of evidence. 42 U.S.C. § 423(d)(5)(B); *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

Plaintiff does not identify any of Dr. Beck's particular notes that would potentially be used to support Dr. Seelig's opinion or undermine the ALJ's reasoning. Many of the findings in those notes suggest milder conditions than Dr. Seelig found and thus support the ALJ's reasoning. For example, Dr. Beck found that Ms. Nance had a normal reciprocal gait, was able to toe and heel walk and do a partial knee bend while balancing (without weakness but with pain), showed negative Rhomberg, Lhermitte, and Spurlings signs, and had fine and gross motor coordination in all four extremities. AR 804-05, 811. Dr. Beck also found that Ms. Nance showed a negative straight leg raise; while Ms. Nance showed loss of sensation from carpal tunnel in three digits on the right, she was "otherwise neurologically intact and did not have radicular symptoms." AR 805, 811. Dr. Beck found that Ms. Nance's range of motion was intact in the shoulders, she had full strength in her upper limbs, and "[h]er neurologic exam and recent MRI are reassuring and both are normal." AR 805, 811.

Ms. Nance points to several items in Dr. Beck's notes that she asserts indicate that myofascial pain, neck pain, and back pain are as limiting as Dr. Seelig opined. In particular, Dr. Beck noted "myofascial tenderness of the back and gluteal and thigh regions" and "tenderness to

ORDER - 12

light touch." AR 811. He found that neck flexion causes discomfort in Ms. Nance's neck and back and that she had mild limitation to rotation in her neck. AR 805. He found that both lateral bending and back range of motion cause Ms. Nance pain. AR 805, 811.

As noted above, the ALJ found that Ms. Nance's back, neck, and myofascial pain existed and would affect her ability to maintain persistence and pace and limit her postural activities. AR 24-25. But the ALJ rejected the severity of the limitations about which Dr. Seelig opined. *Id.* Dr. Beck did not opine as to whether or how her findings regarding Ms. Nance's condition would translate into functional impairments. Dr. Beck's notes do not demonstrate any error in the ALJ's consideration of Dr. Seelig's 2016 opinion.

The Court therefore holds that the ALJ relied on specific and legitimate reasons, supported by the record, for partially rejecting Dr. Seelig's 2016 opinion.

Contrary to Ms. Nance's assertions, the letter Dr. Seelig attached to the 2016 evaluation did not purport to offer any explanation or support for her opinion. Dr. Seelig incorporated the letter in response to a question asking her opinion about Ms. Nance's ultimate ability to work full-time; the letter did not respond to questions about "findings that support" her assessments. AR 767; *see* AR 764-66. The letter goes into detail about the limitations Dr. Seelig found, the prognosis for each condition, and information about treatment, but does not explore the bases for those findings. AR 768-72.

Substantial evidence supports the ALJ's reasons for rejecting the severity of limitations in the opinion. Neither Dr. Seelig's assessment nor treatment notes contain objective support for an inability to lift up to ten pounds. In the space to write "medical conditions and findings that support" this limitation, Dr. Seelig listed only diagnoses and referenced no findings in support. AR 764. As the ALJ noted, there are no findings of weakness evident in the record. Dr. Beck

ORDER - 13

found that Ms. Nance had "full strength" and "good strength" at her visits. AR 805, 811. Likewise, Dr. Seelig's opinions contain no objective support for a need to alternate sitting and standing. Again, Dr. Seelig did not list any findings in support of this limitation. AR 765. Dr. Beck found Ms. Nance showed no pain behavior, no difficulty walking, and no loss of strength or muscular atrophy. AR 811. The ALJ's findings on these points are thus supported by substantial evidence.

The record also supports the ALJ's finding that Ms. Nance can perform frequent handling and fingering. Dr. Beck did find that Ms. Nance has loss of sensation in her right hand, and he recommended electrodiagnostic testing. AR 805. The results of that testing showed moderate carpal tunnel syndrome on the right and mild carpal tunnel on the left. AR 792. They also indicated that Ms. Nance was a drummer and that carpal tunnel "was affecting fine motor more before wearing splints and her sensation is improved on exam." AR 792. Substantial evidence supports the ALJ's characterization of these findings as "mild to moderate." The ALJ could rationally interpret these exam results, and Ms. Nance's ability to continue drumming, to be inconsistent with Dr. Seelig's limiting her to occasional handling and manipulating. *See Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ also offered a specific and legitimate reason for rejecting a total limitation on postural activities: as the ALJ found, Dr. Seelig did not explain or support such a limitation. Instead, Dr. Seelig again referred only to a list of diagnoses. AR 764, 766. The ALJ permissibly discounted her extreme opinion on this basis. *See Molina*, 674 F.3d at 1111 ("[T]he ALJ may permissibly reject [ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.") (internal quotation marks omitted).

The record supports the ALJ's finding that the severity of Dr. Seelig's opinion about Ms. Nance's cervicalgia was inconsistent with Ms. Nance's minimal complaints of symptoms, a lack of significant neurological exam findings, and conservative recommended treatment. Ms. Nance's treatment notes show that her neck complaints had begun only two months before. *See* AR 798. At that visit, Dr. Beck diagnosed the condition as chronic and noted that although physical therapy was "not likely to resolve her pain," it "may improve her self management of pain *and function*." AR 805 (emphasis added).

Treatment notes from two months later indicated her neck pain had been "gradually improving since" her previous visit. AR 798. In addition, the ALJ accounted for Ms. Nance's limitations from neck, back, and myofascial pain by limiting her to two-hour increments of routine tasks. AR 25.

Finally, the record supports the ALJ's finding that the severity of Ms. Nance's chronic low-back pain was inconsistent with "mild objective findings on an MRI" and clinical findings showing she could "move about without guarding" and had negative straight leg raises, no atrophy, and good strength and was neurologically "intact except for decreased sensation of the left lateral thigh." *Id.*; *see* AR 439, 804-05, 811.

The ALJ drew rational inferences from the evidence. *Orn*, 495 F.3d at 630. Because the ALJ offered reasons that are specific and legitimate and supported by substantial evidence, the Court does not need to consider the ALJ's additional reason that Dr. Seelig's treatment recommendations—pain medication, walking, and exercise—suggest Ms. Nance was capable of at least sedentary work. AR 25.

## IV. PLAINTIFF HAS WAIVED ANY ISSUE REGARDING THE ALJ'S STEP-FIVE FINDING CONCERNING THE NUMBER OF WORK OPPORTUNITIES IN THE REGIONAL OR MULTI-REGIONAL ECONOMY

Ms. Nance also contends that the ALJ erred in finding at step five of the sequential evaluation process that the number of jobs she can perform is "significant." Based on a vocational expert's testimony, the ALJ found that Ms. Nance can perform the jobs of final assembler (6,800 jobs in the US and 200 jobs in Washington), patcher (6,500 jobs in the US and 180 jobs in Washington), and document preparer (6,600 jobs in the US and 250 jobs in Washington). AR 27; *see* AR 66-67. These numbers total 19,900 in the country and 630 in Washington State.

When the Commissioner finds a claimant not disabled at step five, she must show "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do." 20 C.F.R. § 404.1560(c)(2). Social Security regulations state, "[w]e consider that work exists in the national economy when it exists in significant numbers *either* in the region where you live *or* in several other regions of the country." 20 C.F.R. § 404.1566(a). There are thus two ways for the ALJ to satisfy this burden: with regional job numbers or job number encompassing "several other regions" in the United States. *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999); *Beltran v. Astrue*, 700 F.3d 386, 389-90 (9th Cir. 2012).

Thus, if either 630 jobs in Washington or 19,900 jobs in the country are "significant numbers," the ALJ did not err in finding Ms. Nance not disabled at step five. AR 27, 65-67.

In order to preserve the alleged error concerning the number of jobs, a claimant who is represented by counsel is required to timely and specifically challenge, during the administrative hearing, the evidentiary foundation for the Vocational Expert's opinion about the number of jobs

ORDER - 16

in the national economy that the claimant would be able to perform despite his or her disability. *Shaibi v. Berryhill,* 883 F.3d 1102, 1108-09 (9th Cir. 2018). If the claimant fails to raise the issue during the hearing, he or she has forfeited any challenge on appeal. *Id.; Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir. 1999). The claimant in this case has waived the issue and is precluded from raising it in this judicial review, because counsel did not challenge the evidentiary foundation for the Vocational Expert's testimony during the administrative hearing. AR 67-69.

Even if this issue was not waived, there is no basis for reversal. The Ninth Circuit has not set out a bright-line rule defining "significance" for purposes of step-five findings. *Beltran*, 700 F.3d at 389-90. Instead, it finds a "comparison to other cases . . . instructive." *Id.* at 389.

In *Beltran*, the Ninth Circuit found that 1,680 jobs in the national economy was not a significant number. 700 F.3d at 389-90. The court drew comparisons to decisions that held 622,000 and 64,000 jobs nationally to be significant numbers. *Id.* (citing *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995)). More recently, the Ninth Circuit stated that "the ALJ's finding that 25,000 national jobs is sufficient presents a close call," before finding that number significant. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014). The court cited an Eighth Circuit case that held 10,000 to be a significant number of jobs in the national economy. *Id.* (citing *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997)).

Unpublished decisions of this Court have relied on *Gutierrez* to find national job-numbers similar to the instant case to be "significant." *Purser v. Colvin*, No. 3:15-CV-05845-KLS, 2016 WL 3356193, at *4 (W.D. Wash. June 17, 2016) ("[I]n light of the Ninth Circuit's holding that 25,000 constitutes a significant number of jobs in the national economy, the remaining 28,970 jobs in the national economy and 455 jobs in Washington

ORDER - 17

state for the bench hand occupation is sufficient to satisfy the ALJ's findings at step five."); *Nelson v. Colvin*, 2014 WL 372496, at *4 (W.D. Wash. Feb. 3, 2014) (collecting cases and finding that 22,000 national jobs is significant); *Murphy v. Colvin*, 2013 WL 5371955, at *14 (W.D. Wash. 2013) (finding 17,782 national jobs was significant)); *Hoffman v. Astrue*, No. 09-5252, 2010 WL 1138340, at *14–16 (W.D. Wash. Feb. 8, 2010) (finding 9,000 jobs nationally and 150 jobs regionally were both significant).

Numerous decisions, cited above, have upheld findings that smaller numbers *are* significant. Therefore, comparing Ms. Nance's case with this Court's prior decisions, 19,900 jobs is a "significant number" in the national economy. *See Beltran*, 700 F.3d at 389. The ALJ did not err in relying on that number to find Ms. Nance not disabled at step five.

## V.  CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined Ms. Nance to be not disabled. The Commissioner's decision to deny benefits is therefore AFFIRMED.

DATED this 14th day of August, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER - 18